UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBIN RENEE MATHIAS,<br><br>    Plaintiff,<br><br>    v.<br><br>FIAT CHRYSLER AUTOMOBILES, NV ("FCA"), et al.,<br><br>    Defendants. | Case No. 5:16-cv-01185-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 16 |

### I. INTRODUCTION

Plaintiff Robin Renee Mathias ("Plaintiff") was seriously injured in 2013 when the Jeep Grand Cherokee she was driving "left the roadway surface, descended off the roadway shoulder, struck a fence, and ultimately struck a pole head on." First Am. Compl. ("FAC"), Dkt. No. 1, at ¶ 30. In this litigation, Plaintiff alleges the crash and her ensuing injuries were caused by defects in the vehicle. Id. She asserts causes of action for negligence, strict liability, and breach of warranty against several defendants, and seeks a variety of damages, including punitive damages for some defendants' "reckless and intentional misconduct post-bankruptcy." Id.

After Plaintiff initiated the case in Santa Clara County Superior Court, Defendant Fiat Chrysler US LLC ("FCA US") removed the action to this court pursuant to 28 U.S.C. § 1452 because, in its opinion at least, "Plaintiff seeks the imposition of punitive damages against FCA US in contravention of two Orders of the Bankruptcy Court." Notice of Removal, Dkt. No. 1, at 2:2-4. Plaintiff now moves to remand. Dkt. No. 16. Having carefully considered the pleadings filed by the parties, the court has concluded that FCA US did not meet its burden to overcome the strong presumption against federal jurisdiction. Plaintiff's motion will therefore be granted for the

1

Case No.: 5:16-cv-01185-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

reasons explained below.

## II. LEGAL STANDARD

Removal jurisdiction is a creation of statute. See Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir.1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress."). In general, only those state court actions that could have been originally filed in federal court may be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."); see also Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by defendant."). Accordingly, the removal statute provides two basic ways in which a state court action may be removed to federal court: (1) the case presents a federal question, or (2) the case is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1441(a), (b).

On a motion to remand, it is the removing defendant's burden to establish federal jurisdiction, and the court must strictly construe removal statutes against removal jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."); Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010). "Where doubt regarding the right to removal exists, a case should be remanded to state court." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## III. DISCUSSION

As an initial matter, it is important to observe that federal jurisdiction for this action cannot be based on either § 1331 or § 1332. Indeed, the FAC, which is currently the operative pleading, does not raise the sort of federal question necessary for jurisdiction under § 1331; to the contrary,

it contains three causes of action based in exclusively state law. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988) (holding that "a district court's federal-question jurisdiction . . . extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law'"). Nor do the jurisdictional allegations demonstrate the complete diversity prerequisite for jurisdiction under § 1332; instead, Plaintiff and at least one defendant, Matthew Enterprises, Inc., are alleged to be California domiciles. See Kuntz v. Lamar Corp., 385 F.3d 1177, 1181 (9th Cir. 2004) (holding for diversity jurisdiction to arise, "there must be complete diversity of citizenship between the parties opposed in interest").

Instead of these more common jurisdictional bases, FCA US relied on 28 U.S.C. § 1452 in its Notice of Removal. That statute permits removal of a claim or cause of action falling under the purview of another statute, 28 U.S.C. § 1334. For its part, § 1334 vests district courts with original jurisdiction of all cases under the title 11 of the United States Code, otherwise known as the Bankruptcy Code. In addition, subsection (b) of § 1334 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

The phrase "arising under title 11" in § 1334(b) describes "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." In re Harris Pine Mills, 44 F.3d 1431, 1435 (9th Cir. 1995) (quoting In re Wood, 825 F.2d 90, 96 (5th Cir. 1987)). The phrase "arising in," although less clear, "seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases." Id. (quoting Wood, 825 F.2d at 97). "In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Id. Claims or causes of action that are said to "arise under" or "arise in" title 11 are considered "core" bankruptcy proceedings. Stern v. Marshall, 564 U.S. 462, 476 (2011); Harris Pine Mills, 44 F.3d at 1435 (9th Cir. 1995). "They are two of the three categories of cases over which district courts have jurisdiction under 28

U.S.C. § 1334(b)." Harris Pine Mills, 44 F.3d at 1435.

"A nonexhaustive list of core proceedings is set out in 28 U.S.C. § 157." Schultze v. Chandler, 765 F.3d 945, 948 (9th Cir. 2014). In addition, the Ninth Circuit has held that because "bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner," requests for the bankruptcy court to do so "must be considered to arise under title 11" and, for that reason, are core proceedings subject to federal jurisdiction under § 1334(b). In re Franklin, 802 F.2d 324, 326-27 (9th Cir. 1986). The Second Circuit recently held something similar, albeit finding that interpretation issues fall under the bankruptcy court's "arising in" jurisdiction. In re Motors Liquidation Co., Nos. 15-2844-bk(L), 15-2847-bk(XAP), 15-2848-bk(XAP), 2016 U.S. App. LEXIS 12848, at *31 (2d Cir. July 13, 2016).

Here, FCA US argues that Plaintiff's claim for punitive damages is a core proceeding - thereby "arising under" or "arising in" title 11 - because it requires the bankruptcy court to interpret orders it made in connection with the bankruptcy of Chrysler LLC ("Chrysler"),[1] which company is alleged to have designed and manufactured the vehicle involved in Plaintiff's accident. FAC, at ¶¶ 4, 23. Chrysler filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York on April 30, 2009. Id. at ¶ 24. As part of the bankruptcy proceedings, Chrysler and FCA US entered into a Master Transaction Agreement ("MTA") on or about May 19, 2009, through which FCA US purchased substantially all of Chrysler's assets and assumed certain liabilities. Decl. of John G. Gherini, Dkt. No. 53, at ¶ 2. The "Assumption of Liabilities" section of the MTA states, in relevant part:

> Section 2.08 Assumption of Liabilities. On the terms and subject to the conditions and limitations set forth in this Agreement, at the Closing,[2] the Purchaser shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms, the Assumed Liabilities and no others. "Assumed

---

[1] By the time of the Bankruptcy, Chrysler was known as Old Carco LLC.

[2] The "Closing" is the name given to the meeting at which transfers required by the MTA were to be executed.

4
Case No.: 5:16-cv-01185-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

> Liabilities" means (without duplication) each of the following Liabilities of Sellers existing as of immediately prior to the Closing:
>
> . . . .
>
> (h) all Product Liability Claims[3] arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing; . . . .

Id. at Ex. B.

The Bankruptcy Court issued an order approving the MTA on June 1, 2009, and in particular, found that the provisions of the MTA satisfied the "free and clear" sale requirements of 11 U.S.C. § 363(f).[4] Id. at ¶ 3.

The assumption of liabilities provisions of the MTA were thereafter amended on October 29, 2009, in the following manner:

> Section 2.08(h) of the MTA shall be amended in its entirety to read as follows:

---

[3] The MTA defines a "Product Liability Claim" as:

> [A]ny Action or action taken or otherwise sponsored by a customer arising out of, or otherwise relating to in any way in respect to claims for personal injury, wrongful death or property damages resulting from exposure to, or any other warranty claims, refunds, rebates, property damages, product recalls, defective material claims, merchandise returns and/or similar claims, or any other claim or cause of action, whether such claim is known or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted.

[4] The "free and clear" sale requirements provide:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if - (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

> (h) (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

Id. at Ex. E.

This particular amendment is known as "Amendment No. 4." The Bankruptcy Court issued an order approving Amendment No. 4 on November 19, 2009. Id. at ¶ 6.

FCA US contends that because the MTA outlines its product liability for vehicles designed, manufactured and sold before the Closing, and because Amendment No. 4 controls the scope of its liability for punitive damages for claims based on those vehicles, Plaintiff's punitive damages request requires the bankruptcy court to interpret the MTA and Amendment No. 4 and determine whether or not the claim is barred.

But the problem with FCA US' argument is that neither the MTA nor Amendment No. 4 applies to Plaintiff's punitive damages claim, and for that reason, does not require the bankruptcy court to engage in any interpretation of those orders. This is so because of the underlying factual allegations. In the FAC, Plaintiff makes clear that other than strict liability claims, "there is no negligence claim being asserted against the [FCA US] for pre-bankruptcy conduct of Chrysler." FAC, at ¶ 44. Plaintiff states further that FCA US' post-bankruptcy conduct, which as described in the FAC pertains to primarily to a 2014 recall, "was carried out in a reckless, malicious and dangerous manner that constitutes fraud under the law in conscious disregard for the safety of the public." Id. And as already indicated, Plaintiff has limited her punitive damages request as to FCA US to "reckless and intentional misconduct post-bankruptcy."

In the manner pled, the punitive damages request is a so-called "independent claim," based only on FCA US' "own post-closing wrongful conduct." Motors Liquidation Co., 2016 U.S. App.

6

Case No.: 5:16-cv-01185-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

LEXIS 12848, at *42.  "These sorts of claims are based on . . . post-petition conduct, and are not claims that are based on a right to payment that arose before the filing of petition or that are based on pre-petition conduct."  Id.  Consequently, Plaintiffs' independent punitive damages claim is outside the scope of the MTA's "free and clear" provision under § 363(f).  Id.  Indeed, a "free and clear" approval order "'cannot be extended to include . . . claimants whom the record indicates were completely unknown and unidentified at the time [the debtor] filed its petition and whose rights depended entirely on the fortuity of future occurrences.'"  Id. at 39 (quoting Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1277 (5th Cir. 1994)).

In short, the punitive damages claim is not a "core" claim because there is nothing for the bankruptcy court to do in relation to it.  The MTA and Amendment No. 4 simply do not govern the claim, and the orders approving those documents need not be interpreted to determine whether or not the claim is permissible.  Accordingly, FCA US has not established federal jurisdiction under § 1334(d) or and has not established that the removal was proper under § 1452.  In the absence of a viable basis for subject matter jurisdiction in this court, Plaintiff's motion to remand must be granted.

## IV. ORDER

The motion to remand (Dkt. No. 16) is GRANTED.

The Clerk shall REMAND this case to Santa Clara County Superior Court.  All other matters are TERMINATED and VACATED, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated:  September 21, 2016

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-01185-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND